UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

────────────────────────────────────

DARNELL DEXTER,

                    Petitioner,

          V.

JAMES WALSH, Superintendent,[1]

                    Respondent.

────────────────────────────────────

**REPORT AND
RECOMMENDATION**

01-CV-237

## I. INTRODUCTION

Petitioner, Darnell Dexter, acting *pro se*, commenced this action seeking habeas

corpus relief under 28 U.S.C. § 2254.  Petitioner is presently an inmate at the Clinton

Correctional Facility.  In 1997, he was convicted in a New York State court of one count of

Second Degree Murder, four counts of First Degree Robbery, First Degree Criminal

Possession of a Weapon, and Fourth Degree Conspiracy, and was sentenced to a term of

imprisonment.   He contends that his conviction was imposed in violation of his

constitutional rights and should be vacated.

This matter was referred to the undersigned by the Honorable Norman A. Mordue,

───────────────

[1]James Walsh, the named respondent in this action, is the superintendent of the Sullivan
Correctional Facility, where Petitioner was incarcerated when he filed this action.  However, given that
Petitioner is presently incarcerated in the Clinton Correctional Facility, the correct Respondent is Dale
Artus, the Superintendent of the Clinton Correctional Facility.  28 U.S.C. § 2243.  In light of Petitioner's
*pro se* status, the fact that this will not prejudice Respondent, and in the interests of court efficiency, this
Court will deem the Petition amended to change the name of Respondent to Dale Artus.

    The Clerk of the Court is directed to terminate James Walsh as Respondent, add Dale Artus,
Superintendent of the Clinton Correctional Facility, as the new Respondent, and revise the caption of this
case accordingly.

Chief United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and is presently before this Court for a report and recommendation. (Docket No. 29).

## II. BACKGROUND

### A.    Facts

The following factual summary is derived from the testimony at Petitioner's trial.   On October 27, 1995, Marie Johnson was shot and killed when the social club that she owned in Syracuse[2], New York was robbed. (T at 400-01, 463-64).[3]

According to the trial testimony, after shooting Marie Johnson and robbing her social club, Petitioner and co-defendants Clarence Paige ("Paige"), Allen Isaac ("Isaac"), and Shawndell Everson ("Everson") drove to the north side of Syracuse and divided the stolen funds.  (T at 633-34).

Shortly after the shooting of Ms. Johnson, witnesses gave the police a description of the people involved, as well as the car they were driving.  (T at 537-39, 546-49, 553-54, 874-885).  Soon thereafter, the police stopped a car matching the description provided by the witnesses.  (T at 589-90).  The police brought each of the witnesses, separately, to the car that had been stopped.  Each of the witnesses identified the vehicle. (T at 556, 562, 785-86).  Petitioner was the owner and driver of the vehicle. Everson was a passenger. (T at 591).  They had previously dropped off Isaac and Paige.  (T at 634).  Thereafter,

---

[2]According to the testimony of Shauna Johnson, Marie Johnson's granddaughter, Marie ran a social club in her basement where her friends played cards.  (T at 429).

[3]References preceded by "T" are to the transcript pages of Petitioner's trial.  Petitioner was represented by Mark Suben, Esq. and Edward Klein, Esq. at trial.

Petitioner and Everson were taken to the police station for questioning.  (SR at A64). [4]

Petitioner gave the police a statement regarding his involvement in the robbery and

homicide of Marie Johnson.  (SR at A66).

On January 3, 1996, Petitioner was arraigned on Onondaga County Grand Jury

Indictment Number 95-1166.   The indictment charged Petitioner with five offenses,

including one count of Murder in the Second Degree, in violation of New York Penal Law

("N.Y.P.L.") § 25.25(3);[5] two counts of Robbery in the First Degree, in violation of N.Y.P.L.

§160.15(1) and subsection (2); Criminal Use of a Firearm in the First Degree, in violation

of N.Y.P.L. § 265.09(2); and Criminal Possession of a Weapon in the Second Degree, in

violation of N.Y.P.L. § 265.03. (SR at A17-18).

After a Huntley[6] hearing on April 22, 1996, Onondaga County Court Judge Patrick

Cunningham suppressed Petitioner's statement to police, finding a violation of his right to

counsel. (SR at A57-A66).  Petitioner's trial counsel then moved for suppression of certain

physical evidence and identification testimony, which was also suppressed by Onondaga

County Court Judge William Burke on September 26, 1996.  Thereafter, on December 16,

1996, the prosecution moved for dismissal of Indictment Number 95-1166.  The defense

joined in the motion and Judge Burke dismissed the indictment and ordered that Petitioner

be released from custody.  (SR at A160-163).

On January 14, 1997, the prosecution made successful application for permission

---

[4]References preceded by "SR" are to the state court records provided in this case.

[5]Unless indicated, all references to the N.Y.P.L. are to McKinney 1998.

[6]A hearing pursuant to,  People v. Huntley, 255 N.Y.S.2d 838 (1965), is held to determine the
voluntariness of a criminal defendant's statements to the police.

to re-present the case to a new grand jury pursuant to Criminal Procedure Law ("CPL") §210.20(4).  (SR at A71).  The prosecution relied upon new evidence, as co-defendant Everson decided to waive immunity and testify against Petitioner.  (SR at A73).  On January 22, 1997, an Onondaga County grand jury issued Indictment Number 97-0193.  (SR at A21).  The charges in the second indictment were the same as in the first, except for the deletion of the Criminal Use of a Firearm charge and the addition of two counts of Robbery in the First Degree, in violation of N.Y.P.L. § 160.15(4); and one count of Conspiracy in the Fourth Degree, in violation of N.Y.P.L. § 105.10(1).  (SR at A21-22).  Petitioner's case was assigned to Onondaga County Court Judge John Brunetti.

Petitioner moved against this indictment, asking that it be dismissed or, in the alternative, that the first indictment be reinstated.  (SR at A84).  Judge Brunetti determined that Judge Burke's dismissal of the first indictment did not comply with the statutory provisions of New York Criminal Procedure Law and was therefore improper.  (SR at A97).  Accordingly, on April 7, 1997, Judge Brunetti determined that dismissal of the first indictment was a nullity and, therefore, the first indictment was still in effect, making the second indictment a superceding indictment.  (SR at A96-97).  On April 25, 1997, the prosecution successfully moved to consolidate the two indictments.  (SR at A98).

**B.    State Trial Court Proceedings**

Judge Brunetti presided over Petitioner's trial, which began on May 5, 1997.   On May 12, 1997, the jury found Petitioner guilty of Murder in the Second Degree, four counts of Robbery in the First Degree, Criminal Possession of a Weapon in the Second Degree, and Conspiracy in the Fourth Degree. (T at 980-981).

Judge Brunetti sentenced Petitioner on July 8, 1997.  Petitioner was sentenced as

4

a predicate felony offender. (AH at 1-4)[7]. On the first count of Murder in the Second Degree, Petitioner was sentenced to an indeterminate term of 25 years to life imprisonment; on the four counts of Robbery in the First Degree, Petitioner was sentenced to 25 years for each count; on the count of Criminal Possession of a Weapon, Petitioner was sentenced to 15 years; on the final count of Conspiracy in the Fourth Degree, Petitioner was sentenced to two to four years. (S at 17-18 )[8]. All of Petitioner's sentences were to run concurrently. (Id. at 18).

## C.   State Appellate Proceedings

Petitioner, represented by counsel, filed a motion to vacate his conviction, prior to sentencing, pursuant to CPL § 330.30. (SR at A110). Petitioner claimed that he had newly discovered evidence. On June 20, 1997, Judge Brunetti denied Petitioner's motion. (SR at A812, A818).

Petitioner then appealed his conviction to the Appellate Division, Fourth Department, of the New York State Supreme Court. Petitioner raised the following ten arguments in support of his appeal: (1) that the county court erred in deeming the dismissal of the first indictment a nullity and in allowing its reinstatement, (2) that the county court erred when it allowed re-presentation of the same charges to a new grand jury, (3) that Petitioner was deprived of his constitutional right to a speedy trial, (4) that Petitioner was denied a fair trial because of prosecutorial misconduct, (5) that there was insufficient corroboration of the accomplice testimony, (6) that the trial court erred when it denied Petitioner's request for

---

[7] References preceded by "AH" are to the transcript pages of Petitioner's Admission Hearing held on July 2, 1997, before Judge Brunetti. Petitioner admitted to having committed a predicate felony.

[8] References preceded by "S" are to the transcript pages of Petitioner's sentencing proceeding held before Onondaga County Court Justice John Brunetti on July 8, 1997.

a new attorney, (7) that the trial court erred in failing to dismiss the three consolidated counts of the indictment due to defective grand jury proof, (8) that the trial court erred by failing to hold a hearing to address Petitioner's CPL § 330.30 and § 330.50 motion, (9) that the cumulative effects of the errors deprived Petitioner of a fair trial, and (10) that Petitioner's sentence was harsh and excessive.

In a decision issued on March 19, 1999, the Appellate Division, Fourth Department affirmed Petitioner's conviction. People v. Dexter, 688 N.Y.S.2d 289 (4th Dep't 1999). The Appellate Division found that Petitioner did not preserve the first issue regarding the reinstatement of the first indictment for their review. Id. However, the Appellate Division did state that "the dismissal [of the first indictment] was a nullity, the first indictment remained effective, and authorization to seek a superseding indictment was not required." Id. at 291.

The Appellate Division also rejected Petitioner's speedy trial claim as well as Petitioner's argument regarding the alleged insufficient corroboration of the accomplice testimony. Id. As for Petitioner's prosecutorial misconduct claims that were preserved for the Appellate Division's review, the appeals court found them to be without merit. Id. With respect to those prosecutorial misconduct claims that were found not to be preserved for the Appellate Division's review, the appeals court stated that they "decline[d] to exercise [their] power to address them as a matter of discretion in the interest of justice." Id. The Appellate Division further found that "the court did not err in failing to (1) instruct the jury that the co-defendants' plea bargain was contrary to law, (2) in denying defendant's request for new assigned counsel, and (3) in denying defendant's CPL§ 330.30 motion without a hearing." Id. (internal citations omitted). The Appellate Division then rejected Petitioner's

contention that his sentence was harsh and excessive and stated that they reviewed his remaining contentions and found them to be without merit.  Id.

On December 20, 1999, the New York Court of Appeals affirmed the order of the Appellate Division.  People v. Dexter, 94 N.Y. 2d 847 (1999).  The Court of Appeals stated that since it was Petitioner's own request in the alternative that the trial court reinstate the first indictment it was unable to reach his contention that the Supreme Court did not have the authority to vacate the order dismissing the first indictment.  Id.  Additionally, the Court of Appeals found that the remainder of Petitioner's claims were "either unpreserved, nonreviewable or meritless."  Id.

Petitioner, acting *pro se*, filed a motion to vacate his conviction pursuant to CPL §440.10 on the same ten grounds alleged in his appeals to the Appellate Division and Court of Appeals, as well as an additional ground based on a theory of ineffective assistance of trial counsel.  On October 31, 2000, Petitioner's motion was denied by Judge Brunetti.

**D.    Federal Habeas Corpus Proceedings**

Petitioner commenced this action on February 16, 2001, by filing a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Docket No. 1).  Thereafter, the Respondent filed submissions in opposition.  (Docket No. 22 & 23).

For the reasons that follow, the Court recommends that Dexter's petition for a writ of habeas corpus be denied and that his petition be DISMISSED.

**III. DISCUSSION**

7

**A.      Federal Habeas Corpus Standard**

Federal habeas corpus review of a state court conviction is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under AEDPA, federal courts must give substantial deference to a state court determination that has adjudicated a federal constitutional claim "on the merits."  28 U.S.C. § 2254(d); Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir. 2001).  The Second Circuit has stated that an "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim."  Sellan, 261 F.3d at 313 (quotation omitted).  The Second Circuit has also held that even a one-word denial of a petitioner's claim is sufficient to constitute an "adjudication on the merits" for purposes of AEDPA.  Id. at 312-313.

Specifically, AEDPA requires that where a state court has adjudicated the merits of a Petitioner's federal claim, habeas corpus relief may not be granted unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

While both AEDPA and its predecessor statute recognize that a presumption of correctness shall apply to state court findings of fact, Whitaker v. Meachum, 123 F.3d 714, 715 n. 1 (2d Cir. 1997), AEDPA also requires a Petitioner to rebut that presumption by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1); LanFranco v. Murray, 313 F.3d 112, 117 (2d Cir. 2002).  A presumption of correctness applies to findings by both state trial

and appellate courts.  Galarza v. Keane, 252 F.3d 630, 635 (2d Cir. 2001); Whitaker, 123 F.3d at 715 n.1.

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court defined the phrases "contrary to" and "unreasonable application of" clearly established federal law.  A state court decision is "contrary to clearly established federal law . . . if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts."  Id.

A state court decision involves "an unreasonable application of" Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case."  Id.

Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.  In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

**B.      Petitioner's Claims**

Petitioner asserts the following eight claims in support of this Petition: (1) that the trial court erred by allowing re-presentation of his case to a new grand jury, and that the trial court, as a court of concurrent jurisdiction, had no authority to reinstate the first indictment, (2) that Petitioner was denied his constitutional right to a speedy trial, (3) that the trial court erred when it failed to dismiss the three consolidated counts of the indictment, (4) that the court erred by failing to hold a hearing to address his newly discovered evidence, (5) that Petitioner was deprived of a fair trial when the trial court denied his request for a new attorney, (6) that there was insufficient evidence to corroborate the accomplice testimony, (7) that Petitioner was deprived of a fair trial by virtue of prosecutorial misconduct, and (8) that Petitioner was deprived of effective assistance of counsel.

## 1.    Dismissal and Reinstatement of Indictment

For the reasons set forth below, this Court finds that Petitioner's arguments regarding the dismissal and subsequent reinstatement of the first indictment and other alleged errors concerning the grand jury indictment process do not present cognizable habeas corpus claims.

As a threshold matter, it is important to note that Petitioner does not contend that the indictments did not adequately inform him of the charges brought against him.  Beverly v. Walker, 899 F. Supp. 900, 909 (N.D.N.Y.1995) ("An indictment is constitutionally sufficient if 'it charges a crime [1] with sufficient precision to inform the defendant of the charges he must meet and [2] with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events.'").  Rather, Petitioner's claim as to the dismissal and reinstatement of the indictment appears to be based upon alleged errors

under New York state law.

However, claims based upon alleged violations of the state law grand jury indictment process do not implicate a federal constitutional right and cannot be reviewed by this Court. See, e.g., Lucius v. Filion, 431 F. Supp. 2d 343, 346 (W.D.N.Y. 2006); Staley v. Greiner, No. 01-Civ-6165, 2003 WL 470568, at *11 (S.D.N.Y. Feb. 6, 2003). As such, any claim that the dismissal and reinstatement of the indictment was contrary to the New York Criminal Procedure Law cannot form the basis for a cognizable habeas corpus claim.

In addition and in the alternative, Petitioner's subsequent conviction by the petit jury cured any arguable defects in the indictment process. Folger v. Conway, 443 F. Supp. 2d 438, 452-53 (W.D.N.Y. 2006) (following Lopez v. Riley, 865 F.2d 30, 32 (2d Cir.1989)); see also Campbell v. Greene, 440 F. Supp. 2d 125, 142-43 (N.D.N.Y. 2006). As such, this Court finds that Petitioner's claim for habeas relief on this ground should be DENIED.

### 2.    Right to A Speedy Trial

Petitioner's second claim for habeas relief is that he was deprived of the constitutional right to a speedy trial. Specifically, Petitioner argues that it was approximately nineteen (19) months from the time of his arrest to the time of his trial. Respondent argues that any delay was due to Petitioner's pre-trial motions and proceedings. As noted above, the Appellate Division concluded that Petitioner's speedy trial right had not been violated.

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial...." U.S. Const. amend. VI. In reviewing a petitioner's motion with respect to the Speedy Trial Clause, courts examine four factors: (1)

the length of the delay, (2) the reason for the delay, (3) the timeliness of the defendant's assertion of his right, and (4) the prejudice to the defendant caused by the delay.  <u>Barker v. Wingo</u>, 407 U.S. 514, 530 (1972).

The Supreme Court later explained the first of the <u>Barker</u> factors by saying that the length of the delay serves as a "threshold inquiry."  By showing that the length of the delay is "presumptively prejudicial," the defendant triggers an analysis of the remaining factors. <u>Doggett v. United States</u>, 505 U.S. 647, 651-52 (1992) (citing <u>Barker</u>, 407 U.S. at 530-31). The length of the delay may then be considered in connection with the remaining factors of the speedy trial inquiry. <u>Id.</u> at 652.

The Second Circuit has noted that there is a "general consensus that a delay of over eight months meets this standard [of presumptive prejudice], while a delay of less than five months does not."  <u>United States v. Vassell</u>, 970 F.2d 1162, 1164 (2d Cir.1992) (citing Gregory P.N. Joseph, Speedy Trial Rights in Application, 48 Fordham L.Rev. 611, 623 n. 71 (1980)), <u>see</u> <u>also</u>, <u>United States v. Solomon</u>, No. 95 Cr. 154, 1996 WL 399814, at *4 (S.D.N.Y. July 16, 1996) (concluding that a twenty-month delay between indictment and arrest is sufficient to trigger judicial review because it is presumptively prejudicial, but is not uncommonly long).  In the present case, this Court finds that the nineteen (19) month delay was presumptively prejudicial and will examine the remaining three factors.

### a.     Reason for the Delay

Preliminarily, because this case involved a homicide charge, namely, Second Degree Murder, it must be noted that "as evidenced by its specific exclusion from the six month limit imposed by CPL § 30.30, homicide is an extremely serious crime and each

12

case must be considered further in light of the particularities of the delay." United States ex rel. Eccleston v. Henderson, 534 F.Supp. 813, 816 (E.D.N.Y. 1982).

Under the Supreme Court's decision in Doggett, the central inquiry with respect to this factor is "whether the government or the criminal defendant is more to blame for the delay." 505 U.S. at 651.  "The court's determination of whether the Government has made sufficient efforts to satisfy the 'due diligence' requirement is 'fact-specific.' " Perez-Cestero, 737 F.Supp. at 763 (citing Rayborn v. Scully, 858 F.2d 84, 90 (2d Cir. 1988)).

In the present case case, Petitioner was arrested for murder, amongst other crimes, on October 27, 1995.  He was arraigned on January 3, 1996, on an indictment filed on December 20, 1995.  The prosecution announced that they were ready for trial at Petitioner's arraignment.  In the interim period between his arraignment and his trial, Petitioner filed various motions, including an omnibus motion, as well as two suppression motions.  Further, on December 16, 1996, the trial court dismissed the first indictment against Petitioner and he was released.  Thereafter, the prosecution sought and received a second indictment, on which Petitioner was arraigned on February 26, 1997.  Petitioner then moved for dismissal of the second indictment on March 14, 1997.  The court rendered a decision on that motion on April 14, 1997.  Petitioner's trial commenced less than a month later on May 5, 1997.

It appears that the trial was delayed, in large measure, due to the pre-trial motions filed by Petitioner and decisions rendered by the trial court with respect to the various indictments.  Accordingly, the Appellate Division's conclusion that the delay was attributable to Petitioner  was not an unreasonable application of established federal law. Doggett, 505 U.S. 651.

13

### b.    Assertion of the Right

In <u>Barker</u>, the Supreme Court rejected a rule whereby a defendant's failure to demand a trial would constitute a *de facto* waiver of the speedy trial right.  <u>See</u> <u>Rayborn</u>, 858 F.2d at 92 (citing <u>Barker</u>, 407 U.S. at 528).   However, "the Supreme Court recognized that although failure to assert the right does not act as a waiver, such failure will make it difficult for a defendant to assert his right successfully at some later point in time." <u>Rayborn</u>, 858 F.2d at 92.

In <u>Barker</u>, the Supreme Court determined that the defendant's speedy trial right had not been violated because the record established that the defendant "did not want a speedy trial." <u>See</u> <u>id.</u> (quoting <u>Barker</u>, 407 U.S. at 534; <u>see</u> <u>also</u> <u>United States v. Schreiber</u>, 535 F.Supp. 1359, 1363 (S.D.N.Y.1982) ("The speedy trial requirements should not operate to reward a recalcitrant and reluctant defendant.").   "In criminal cases where a speedy trial claim is raised, both the conduct of the government *and* the conduct of the *defendant* are to be weighed, . . . and when it is manifestly apparent that a defendant has no serious interest in the speedy prosecution of the charges against him, a court need not ignore the defendant's fugitivity or recalcitrance in determining whether his sixth amendment rights have been violated."  <u>Rayborn</u>, 858 F.2d at 92. (emphasis in original)(citing <u>Barker</u>, 407 U.S. at 530).

There is no indication in the record that Petitioner asserted his right to a speedy trial at any time prior to his trial.  This failure to assert his right to a speedy trial in a timely fashion, while not dispositive, weighs in favor of finding that Petitioner's speedy trial right was not violated.  <u>United States v. Fassanaro</u>, 471 F.2d 717, 718 (2d Cir. 1973); <u>see</u> <u>also</u>, <u>Barker</u>, 497 U.S. at 531; <u>Henderson</u>, 534 F.Supp. at 816.  Accordingly, this factor is not

14

helpful to Petitioner.

### c.    Prejudice to the Defendant

Potential prejudice to the defendant is the last of the Barker factors.    The presumption of prejudice that arises with a long delay must be analyzed in connection with the reason for the delay.  See Doggett, 505 U.S. at 655.   "[I]n the absence of particular prejudice, 'presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other Barker criteria ... it is part of the mix of relevant facts.'" United States v. Solomon, No. 95 Cr. 154(LAP), 1996 WL 399814, at *5 (S.D.N.Y. July 16, 1996) (quoting Doggett, 505 U.S. at 655).

When analyzing the reason for delay, "Doggett noted that government negligence is less prejudicial than deliberate delay and explained that 'the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows.'" U.S. v. Ramos, 420 F. Supp.2d 241, 245 -248 (S.D.N.Y.2006)(quoting Doggett, 505 U.S. at 657).  "In other words, the longer period of delay that is attributable to the government, the more important the presumption of prejudice."  Ramos, 420 F.Supp.2d at 248.

In this case, a review of the record reveals that the prosecution was not guilty of deliberate delay.  In fact, as noted above, the delay was largely attributable to motion practice by Petitioner.  Additionally, the nineteen month delay is far shorter than delays that have typically resulted in speedy trial violations. See e.g., Doggett, 505 U.S. at 657(six years of delay attributable to government negligence); Ostroff, 340 F.Supp.2d at 371 (ten years of delay attributable to government negligence). See also United States v. Jones, 91 F.3d 5, 9 (2d Cir.1996) (reversing the district court's finding of a speedy trial violation on the basis of twelve months of delay without "some additional compelling circumstance, such

as bad faith by the prosecution or actual prejudice").  There is no indication in the record of any bad faith by the prosecution or actual prejudice to Petitioner related to the delay.

Accordingly, Petitioner's claim for habeas relief based on speedy trial violations should be DENIED.

### 3.    Claim relating to Dismissal of Consolidated Indictment

Petitioner's third claim for habeas relief is that the trial court erred when it failed to dismiss the three consolidated counts of the indictment.   Specifically, Petitioner challenges the testimony offered by witnesses at the second grand jury proceeding, claiming that the presentation of prejudicial evidence at the grand jury proceeding violated his constitutional rights.  Respondent argues that this claim fails to raise a constitutional question.

As noted above, to the extent that Petitioner is asserting defects in the grand jury proceeding, such a claim is not cognizable on habeas review because he was convicted by a jury after a trial. See Lopez v. Riley, 865 F.2d 30, 32 (2d Cir.1989).  In Lopez, the Second Circuit considered whether claims of error in a grand jury proceeding are cognizable in a federal habeas corpus proceeding.  The court held that such challenges to a state grand jury proceeding will not permit habeas relief, finding dispositive the Supreme Court's holding in United States v. Mechanik, 475 U.S. 66 (1986).  Confronted with a constitutional attack on a federal grand jury proceeding, the Supreme Court stated in Mechanik that

> the petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury

proceeding connected with the charging decision was harmless beyond a reasonable doubt.

Id. at 70 (footnote omitted).

Based on that proposition, the Second Circuit reasoned that "[i]f federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are a *fortiori* foreclosed in a collateral attack brought in federal court." Lopez, 865 F.2d at 32 (holding that habeas petitioner's "claims of impropriety before the grand jury in this case concern[ing] the sufficiency of the evidence, a failure to develop exculpatory evidence by the prosecutor, the presentation of prejudicial evidence and error in explaining the law" . . . were "cured in the trial before the petit jury, which convicted").

Thus, the trial jury's guilty verdict necessarily renders any irregularities before the grand jury harmless as it establishes not only that there existed probable cause to indict Petitoner, but also that Petitioner was "in fact guilty as charged beyond a reasonable doubt." Mechanik, 475 U.S. at 68; Lopez, 865 F.2d at 32. Accordingly, this claim is not cognizable on habeas review and should be DENIED.

### 4. Alleged Failure to Conduct Evidentiary Hearing

#### a. Habeas Relief

In Petitioner's fourth claim for habeas relief, he asserts that the trial court erred by refusing to grant him an evidentiary hearing to review new evidence that he discovered after trial. Specifically, the "new evidence" was discovered when Petitioner learned that two of his accomplices were offered greater sentence reductions than that to which they

17

testified at trial.  Presumably, his claim is based on the notion that because his accomplices received favorable sentence-bargaining treatment from the prosecutor and allegedly did not testify truthfully or accurately concerning such treatment, it deprived him of the opportunity to effectively impeach the accomplices at trial.  Petitioner argues that an evidentiary hearing was necessary to review this alleged new evidence.

However, Petitioner only states a claim of procedural defect in state post-conviction proceedings and federal habeas relief is not available for such alleged defects.  Jones v. Duncan, 162 F. Supp.2d 204, 217-18 (S.D.N.Y. 2001) ("All the circuits that have considered the issue, except one, have held that 'federal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings.'")(quoting Franza v. Stinson, 58 F.Supp.2d 124, 151 (S.D.N.Y.1999)); see also, Fuzia v. Lewin, 2006 WL 1229080, *4 (E.D.N.Y. May 5, 2006)(holding the same).

"While the Second Circuit has not directly addressed this issue, district court decisions within the Circuit (several of which have been affirmed by the Second Circuit) have followed the majority rule."  Jones, 162 F. Supp.2d at 218 (citing Diaz v. Greiner, 110 F.Supp.2d 225, 235 (S.D.N.Y.2000) ("Petitioner's unsupported assertion that the trial court denied his (third) CPL § 440.10 motion without a hearing violated due process is not cognizable on federal habeas review."); Lugo v. Kuhlmann, 68 F. Supp.2d 347, 376 n. 15 (S.D.N.Y.1999); Franza v. Stinson, 58 F.Supp.2d at 152.

Therefore, this Court finds that Petitioner's assertion that the failure to hold a hearing on his CPL §330.30 newly discovered evidence motion violated due process is not cognizable on federal habeas review.

18

### b.  Merits of Petitioner's Claim

Moreover, even if the Court were to address Petitioner's claim on the merits, the Court would not find that the state court's failure to hold a hearing before denying Petitioner's CPL § 330.30 motion violated his constitutional rights.

In order to warrant an evidentiary hearing pursuant to CPL § 330.30, a petitioner's moving papers must be supported by "sworn allegations of fact." See CPL § 330.40(2)(a) & (e)-(f) (governing CPL § 330.30(3) motions).  Here, Petitioner's own trial attorney stated in his CPL §330.30 motion that the allegations on which the motion was "brought are hearsay allegations of Clarence Paige."  (SR at A114).  Therefore, the trial court's refusal to conduct an evidentiary hearing was in compliance with state statutory law.[9]  This procedure is not constitutionally deficient. See, e.g., Rodriguez v. Hoke, 89 Civ. 7618, 1990 WL 91739 at *2 (S.D.N.Y. June 25, 1990).

In any event, Petitioner's "newly discovered evidence" relates only to the sentence reductions his accomplices received, not to the constitutionality of his conviction. See Herrera v. Collins, 506 U.S. 390(1993) (stating that there must be an independent constitutional violation occurring in the underlying state criminal proceeding to warrant habeas relief); White v. Keane, 51 F.Supp.2d 495, 502 (S.D.N.Y.1999); McCool v. New York State, 29 F.Supp.2d 151, 160 (W.D.N.Y.1998) ("For habeas relief to be available, the newly discovered evidence must bear on the constitutionality of the petitioner's

---

[9] See also  United States v. Aiello, 814 F.2d 109, 113-14 (2d Cir.1987) ("To warrant plenary presentation of evidence, the [§ 2255 habeas] application must contain assertions of fact that a petitioner is in a position to establish by competent evidence···· Airy generalities, conclusory assertions and hearsay statements will not suffice because none of these would be admissible evidence at a hearing.").

conviction."); Roberts v. LeFevre, 88 Civ. 4114, 1990 WL 6556 at *6 (S.D.N.Y. Jan.22, 1990); Mapp v. Clement, 451 F.Supp. 505, 511 (S.D.N.Y.1978) ("newly discovered evidence only warrants habeas corpus relief where it bears on the 'constitutionality of the applicant's detention; the existence merely of newly discovered evidence relevant to the guilt of a state petitioner is not a ground for relief on federal habeas corpus'")(citing Townsend v. Sain, 372 U.S. 293, 317 (1963)).

Further, the Second Circuit noted in a similar case that a new trial is not warranted based on newly discovered evidence showing that a co-defendant received undisclosed consideration for testifying against defendant where such evidence was cumulative of impeachment evidence presented at trial as to testifying co-defendant's interest and bias. United States v. Wong, 78 F.3d 73, 80-81 (2d Cir.1996).  As discussed below, there was sufficient impeachment of the co-defendants' testimony available to Petitioner together with appropriate instructions on accomplice testimony as well as instructions on the credibility of testimony that is given in exchange for the recommendation of a reduced sentence.

Therefore, Petitioner's claim for habeas relief on this ground should be DENIED.

### 5.    Ineffective Assistance of Counsel

In Petitioner's fifth claim for habeas relief, he asserts the trial court deprived him of effective assistance of counsel when it denied Petitioner's request for the appointment of another attorney.  In Petitioner's eighth ground for habeas relief, he claims that he was denied effective assistance of counsel when his attorney didn't allow him to testify at a Huntley hearing.

### a.    Refusal to Appoint New Attorney

20

Petitioner objected to his trial attorney before the trial started. At his April 22, 1996 suppression hearing, Petitioner claimed that he had a communication problem with his attorney. (SH at 18).[10]  Specifically, Petitioner stated that his attorney, Mark Suben ("Mr. Suben"), was "not listening to [him]." (Id.). Petitioner stated that he didn't want Mr. Suben to "ask certain questions he want[s] to ask, when I want him to ask certain questions that I know about." (Id.). Judge Patrick Cunningham presided over this hearing and denied Petitioner's request for a new attorney, stating that Mr. Suben was more than qualified, citing his law school education and experience working at the District Attorney's office in New York. (Id.).

Petitioner renewed his complaint during an August 15, 1996 hearing before Judge Burke. (CH at 2).[11]  This time, Petitioner alleged that Mr. Suben was withholding documentary information that would help him win his case. (Id. at 3). Mr. Suben stated, for the record, that he provided his client with copies "of every aspect of [the] file." (Id. at 4).  Mr. Suben then provided Petitioner with more copies of other recent documents relating to his case, as well as a draft of a motion that he was preparing to bring on Petitioner's behalf. (Id.). After that, Petitioner made no further requests on the record for any documents at this hearing.  See (id.).  Thereafter, Judge Burke denied Petitioner's request for a new attorney, reiterating that Mr. Suben was more than qualified and competent to try the case. (Id. at 5) .  Judge Burke stated that:

---

[10]References preceded by "SH" are to the transcript pages of the suppression hearing held on March 22, 1996.

[11]References preceded by "CH" are to the transcript pages of the calendar hearing held on August 15, 1996.

21

> I've gone over your file, I've looked at it, I don't see where this lawyer
> has missed any beat in your case.   Maybe he's got a problem
> communicating with you, and maybe he doesn't call you, hold your
> hand like you might want, but he's your lawyer. .. If he doesn't do his
> job I'll take him to task for it, but I'm not going to let you do it."

(Id.).  As noted above, the Appellate Division affirmed the trial court's decision.  Dexter, 688
N.Y.S. 2d at 291.

It is well established that the Sixth Amendment guarantees a criminal defendant the
appointment of competent counsel.   See Gideon v. Wainwright, 372 U.S. 335 (1963).
However, that right does not ensure a "meaningful attorney-client relationship."  Morris v.
Slappy, 461 U.S. 1, 13- 14 (1983); accord United States v. Schmidt, 105 F.3d 82, 89 (2d
Cir.1997) (trial court may assign an attorney not of defendant's choosing so long as counsel
affords competent representation).

If a defendant asserts a "seemingly substantial complaint" in support of a motion to
substitute counsel, a trial court should look into the reasons for the complaint.  McKee v.
Harris, 649 F.2d 927, 933 (2d Cir.1981).  However, even if the trial court does not look into
the reasons behind the complaint, a petitioner fails to state a claim for  habeas corpus relief
unless he can show that he sustained actual harm as a result of the omission.   See id. at
933.

Moreover, although a trial court may not force a defendant to proceed with an
incompetent attorney, "the right to counsel of one's choice is not absolute, [and] a trial court
may require a defendant to proceed to trial with counsel not of defendant's choosing."
Schmidt, 105 F.3d at 89.

In this case, Petitioner did not cite a "substantial complaint" when he requested new counsel.  Petitioner merely stated that Mr. Suben was not following Petitioner's advice regarding the questioning of witnesses and that they were having troubles communicating. The trial court, after reviewing the file and addressing Petitioner's complaint, denied the request.  The Appellate Division affirmed the trial court's decision.

Under the deferential AEDPA standard, which applies because the Appellate Division determined this claim on the merits, Petitioner must demonstrate that the Appellate Division's decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law," or involved "an unreasonable determination of the facts."

As noted above, the trial court declined to credit Petitioner's conclusory complaints regarding his alleged difficulty communicating with his attorney.  In sum, the trial court found that although Petitioner and his attorney may have been having disagreements about strategy, there had not been a "complete breakdown in communication between client and counsel" sufficient to justify a change.  Torres v. Elcore, 05-CV-898, 2006 WL 3536272, at *7 (W.D.N.Y. Dec. 7, 2006) (citing McKee v. Harris, 649 F.2d 927, 931 (2d Cir.1981)).  The trial court was satisfied that Petitioner was being provided with an "effective advocate," as required by the Sixth Amendment.  Viscomi v. Conway, 438 F. Supp.2d 163, 174 (W.D.N.Y. 2006) (citing Wheat v. United States, 486 U.S. 153, 160(1988)).

The Appellate Division affirmed the trial court's decision in this regard, citing New York cases for the proposition that general statements of dissatisfaction do not constitute a genuine basis upon which to demand the appointment of a new assigned attorney.

Dexter, 688 N.Y.S.2d at 291 (citing People v. Walsh, 678 N.Y.S.2d 524 (2d Dep't 1998);
People v. Cotton, 656 N.Y.S.2d 982 (4th Dep't 1997)).

This Court finds that Petitioner has not demonstrated that the Appellate Division's
decision was either "contrary to, or involved an unreasonable application of, clearly
established Federal law," or involved "an unreasonable determination of the facts."  See
Monegro v. Greiner, No. 03-Civ-2735, 2004 WL 187129, *4 (S.D.N.Y. Jan. 28, 2004) ("On
direct review, the Appellate Division found that the judge's decision was proper because
petitioner's 'conclusory attacks on counsel's performance did not constitute good cause for
the desired substitution.' Petitioner has provided no evidence showing that either of these
decisions were 'contrary to, or involved an unreasonable application of, clearly established
Federal law,' or involved 'an unreasonable determination of the facts.'").   As such,
Petitioner's claim for habeas relief on this ground should be DENIED.

In addition, this Court notes that its decision in this regard is based, in part, upon the
fact that Petitioner was not denied effective assistance of counsel.  Indeed, as discussed
more fully below, Petitioner's trial attorney was more than competent, notwithstanding any
alleged communication problems.

### b.    Testimony at Huntley Hearing

In Petitioner's eighth ground for habeas relief, he claims that his trial attorney failed
to provide him with effective assistance of counsel when he refused to call Petitioner to
testify at his Huntley hearing.  Petitioner claims that after listening to other witnesses'
allegedly false testimony, he expressed a strong desire to take the stand and testify on his
own behalf and that   Mr. Suben objected to that idea and prevented Petitioner from

testifying.  (SH at 166-170).

In order to prevail on a claim of ineffective assistance of counsel within the framework established by the Supreme Court in Strickland v. Washington, 466 U.S. 668,(1984), a habeas petitioner must satisfy a two-part test.  First, a petitioner must demonstrate that counsel's performance was so deficient that counsel was not functioning as "counsel" within the meaning of the Sixth Amendment to the Constitution. Id. at 688.  In other words, a petitioner must show that his attorney's performance "fell below an objective standard of reasonableness." Id.

Second, a petitioner must show that counsel's deficient performance prejudiced him. Id. at 694.  To establish the "prejudice" prong of the Strickland test, a petitioner must show that a "reasonable probability" exists that, but for counsel's error, the outcome of the trial would have been different. Id. at 694.  The issue of prejudice need not be addressed, however, if a petitioner is unable to demonstrate first that his counsel's performance was inadequate. "[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

In the present case, Petitioner failed to show that his trial attorney's performance fell below the objective standard of reasonableness.  The attorney's decision not to permit Petitioner to testify at the hearing was a strategic decision and such "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  Id. at 690.  Indeed, as this Court has previously noted, "[c]alling a criminal defendant to testify in his behalf is one of those strategic decisions by defense

25

counsel that a habeas court generally may not, with hindsight, second guess." Zeito v. Girdich, 431 F. Supp.2d 329, 334 (W.D.N.Y. 2006).

Furthermore, it is important to note that Petitioner's suppression hearing resulted in the significant suppression of his statement to the police. Not only was Mr. Suben's performance competent, it was also largely successful. As the trial court noted, Mr. Suben had not "missed any beat" in representing Petitioner. (CH at 4, 5). A review of the record as a whole reveals that Mr. Suben's performance during the suppression hearings and during the trial was more than competent, where he made two successful suppression motions, served many demands for evidentiary materials and other information on the prosecution, and vigorously cross-examined the prosecution's witnesses.

Accordingly, Petitioner's claim for habeas relief on this ground should be DENIED.

### 6.  Corroborative Evidence

Petitioner's sixth claim for relief is that there was insufficient corroborative evidence of the accomplice testimony offered at trial. Under New York's rules of evidence, "[a] defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense." N.Y. CPL § 60.22.; see also People v. Sweet, 78 N.Y.2d 263, 267 (1991), see also, People v. Hudson, 51 N.Y.2d 233, 238(1980); People v. Cona, 49 N.Y.2d 26, 35-36 (1979). Respondent argues that this ground is an evidentiary claim that is not of a constitutional magnitude.

Federal review of a state court conviction is limited to errors of constitutional magnitude that denied a criminal defendant the right to a fundamentally fair trial. Cupp v.

Naughten, 414 U.S. 141, 146 (1973); Estelle v. McGuire, 502 U.S. 62, 68 (1991) ("In

conducting habeas review, a federal court is limited to deciding whether a conviction

violated the Constitution, laws, or treaties of the United States.").  Ordinarily, state court

rulings on evidentiary matters are matters of state law and "are not reviewable by a habeas

court unless the errors alleged are so prejudicial as to constitute fundamental unfairness."

Rosario v. Kuhlman, 839 F.2d 918, 924-25 (2d Cir. 1988); see also, Lipinski v. People of

New York, 557 F.2d 289, 292 (2d Cir. 1977) ("The states have traditionally been accorded

great latitude in determining rules of evidence to govern proceedings in their own courts.

In this sensitive area, characterized by delicate and interrelated judgments of fairness and

efficiency, the federal courts have trod lightly to refrain from abrasive disruptions of state

procedures and to avoid rigidity in an area of law that should be, above all others,

empirical.").

Petitioner fails to raise a question of fundamental unfairness regarding the

accomplice testimony.   In any event, a review of the record shows that there was

corroborating evidence and the prosecution presented that evidence.  As the Appellate

Division noted in its decision, "[t]here was proof that, when defendant was apprehended

one-half hour after the crimes, his clothing matched the description of the clothing worn by

one of the assailants, he was seated in a vehicle similar to the one used in the crimes, and

the revolver found in the trunk of that vehicle was similar to the one used in the crimes."

People v. Dexter, 688 N.Y.S.2d at 290.  This certainly provided sufficient corroborating

evidence to connect Petitioner to the crimes charged. Accordingly, Petitioner's sixth ground

for habeas relief should be DENIED.

7.      **Prosecutorial Misconduct**

Petitioner claims (1) that two comments made by the prosecution in its summation were improper, (2) that a question asked by the prosecutor of his accomplice elicited prejudicial testimony, and (3) the fact that the prosecutor gained the cooperation of his co-defendants by "enticing" them, outside the presence of counsel, with significant sentence reductions deprived him of a fair trial.

a.      **Summation Comments**

Petitioner objects to the following two comments made by the prosecutor during summation.  First, the prosecutor made reference to several meetings that Petitioner and his co- defendants had prior to trial.  The prosecutor suggested during summation that the defendants had developed a "code of silence" as result of their meetings, which had been "reinforced by [Petitioner's] attorney."  (T at 901-02).  Second, Petitioner claims that the prosecution shifted the burden of proof to him when it stated in summation that:

> I would indicate to you that there's not one shred of evidence that's been put into this case that tells you anything different than what you've heard.  There's not one shred of evidence which indicates an instant explanation as to where this individual was. There's not one witness that came in here and told you I was playing cards with him or I was doing drugs with him on Catherine Street.

(T at 917-18).

i.      **"Code of Silence" Comment**

The "code of silence" comment was never objected to by defense counsel at trial. See (T at 901-03).  The Appellate Division stated that this alleged instance of prosecutorial misconduct was "not preserved for [their] review, and [they] decline[d] to exercise [their]

28

power to address [it] as a matter of discretion in the interest of justice." People v. Dexter, 688 N.Y.S.2d at 290 (citing CPL § 470.05[2], § 470.15[6][a]).

Ordinarily, the failure to preserve a claim for appellate review constitutes procedural default and bars federal habeas corpus review. See Manzella v. Senkowski, No. 97-CV-921, 2004 WL 1498195, at *28 (W.D.N.Y. July 2, 2004); Cabassa v. Filion, No. 03 CIV. 2920, 2004 WL 1367503, at *5 (S.D.N.Y. June 16, 2004).

Where the highest state court that rendered a judgment in the case "clearly and expressly states that its judgment rests on a state procedural bar," such procedural default constitutes independent and adequate state grounds to deny habeas relief. Harris v. Reed, 489 U.S. 255, 263 (1989) (internal quotations and citations omitted); see also Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir.1996); Levine v. Commissioner of Corr. Servs., 44 F.3d 121, 126 (2d Cir.1995). In such cases, a federal court is generally barred from reviewing a petitioner's claims.

The appeals court's language indicates that its decision with respect to this portion of Petitioner's prosecutorial misconduct claim was based upon the fact that the claim had not been preserved for appellate review. Accordingly, this Court finds that it is barred from reviewing Petitioner's prosecutorial misconduct with respect to the "code of silence" comment because the Appellate Division's rejection of this claim was clearly based upon the procedural default. Harris, 489 U.S. at 262; see also, Glenn, 98 F.3d at 724.

### ii.   Burden of Proof Comment

The habeas court's scope of review as to claims of prosecutorial misconduct is quite limited. In order to overturn a conviction, the Court must find that the prosecutor's

comments constituted more than mere trial error and instead were so egregious as to violate the petitioner's due process rights. See Donnelly v. DeChristoforo, 416 U.S. 637, 647-48 (1974); Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir.1990) ("The appropriate standard of review for a claim of prosecutorial misconduct on a writ of habeas corpus is the narrow one of due process, and not the broad exercise of supervisory power.") (internal quotation marks and citations omitted); accord Tankleff v. Senkowski, 135 F.3d 235, 252 (2d Cir.1998).

Thus, to be entitled to relief, Petitioner must show that he "'suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict.' " Tankleff, 135 F.3d at 252 (quoting Bentley v. Scully, 41 F.3d 818, 823 (2d Cir.1994) (internal quotation marks and citation omitted in original)). "Rarely are comments in a prosecutor's summation 'so prejudicial that a new trial is required.' " United States v. Germosen, 139 F.3d 120, 128 (2d Cir.1998) (quoting United States v. Forlorma, 94 F.3d 91, 93 (2d Cir.1996) (quotations omitted). Reversal of a defendant's conviction is warranted only where " 'the statements, viewed against the entire argument before the jury, deprived the defendant of a fair trial.' " Id. (quoting Forlorma, 94 F.3d at 94).

In determining whether a defendant has suffered actual prejudice as a result of the prosecutorial misconduct, the reviewing court considers three key factors: "the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements." Floyd, 907 F.2d at 355 (quoting United States v. Modica, 663 F.2d 1173, 1181 (2d Cir.1981) (per curiam)); accord, e.g., Germosen, 139 F.3d at 128; United States v. Miller, 116 F.3d 641, 683 (2d Cir.1997); United States v.

30

Perez, 144 F.3d 204, 209 (2d Cir. 1998).

The issue concerning the impropriety of the prosecutor's "burden of proof" statement is a close question and could be considered improper.   The better practice for the prosecutor would have been to clearly declare to the jury that the defense did not have any burden of proof.  Defense counsel objected to the prosecutor's statement, allowing for this Court to review Petitioner's claim.   U.S. v. Ortiz,   857 F.2d 900, 904 (2d Cir. 1988) (appellate review of statements made in prosecution's summation is limited to statements to which an objection is made).

This Court finds that although the prosecutor's remarks were possibly improper, it did not deprive Petitioner of a fundamentally fair trial because Petitioner was not substantially prejudiced by the isolated remark.  As the Second Circuit has noted, "[o]ften, the existence of substantial prejudice turns upon the strength of the government's case: if proof of guilt is strong, then the prejudicial effect of the comments tends to be deemed insubstantial; if proof of guilt is weak, then improper statements are more likely to result in reversal." Modica, 663 F.2d at 1181, see also, Bentley, 41 F.3d 818, 824 (2d Cir. 1994)(holding that review of a habeas corpus challenge based upon prosecutorial misconduct includes consideration of "whether the conviction was certain absent the prejudicial conduct.").

Here, as noted above in Point 6, the proof of Petitioner's guilt was certainly sufficient to support the verdict against him.  This Court finds that there is no indication that the prosecutor's  remark during summation had a substantial and injurious effect or influence in determining the jury's verdict.  Tankleff, 135 F.3d at 252.

In addition, the trial court sustained defense counsel's objection to the comment and instructed the jury that Petitioner had no obligation to produce any evidence.  (T at 918). This instruction acted as a curative measure with respect to the prosecutor's remark.  See Floyd, 907 F.2d at 355.  Further, the trial court instructed the jury at the close of proof on the prosecution's burden of proof beyond a reasonable doubt.  (T at  956).  As this Court has noted, there is a well-established presumption that jurors follow their instructions, Barnard v. Burbary, 452 F. Supp. 2d 178, 193 (W.D.N.Y. 2006).  See also Zafiro v. United States, 506 U.S. 534, 540-41 (1993) (emphasizing that prejudice "can be cured with proper instructions and juries are presumed to follow their instructions") (internal quotation marks omitted)); United States v. Downing, 297 F.3d 52, 59 (2d Cir.2002) (stating that "[a]bsent evidence to the contrary, we must presume that juries understand and abide by a district court's limiting instructions.").

Moreover, here, the prosecutor commented that Petitioner produced no witnesses to support his defense theory.  As stated above, the prosecutor said:

> I would indicate to you that there's not one shred of evidence that's been put into this case that tells you anything different than what you've heard. There's not one shred of evidence which indicates an instant explanation as to where this individual was.  There's not one witness that came in here and told you I was playing cards with him or I was doing drugs with him on Catherine Street.

(T at 917-18).  Although a prosecutor may not suggest that a defendant has an affirmative obligation to present evidence on his own behalf, the Second Circuit has recognized that the prosecutor may fairly comment on the defense's failure to call witnesses to support his factual theory.  See United States v. Yuzary, 55 F.3d 47, 53 (2d Cir.1995) ("As to the

government's summation, ' "[t]he prosecutor [wa]s entitled to comment on [Yuzary's] failure . . . to support his own factual theories with witnesses." '") (quoting United States v. Barnes, 604 F.2d 121, 148 (2d Cir. 1979) (quoting United States v. Bubar, 567 F.2d 192, 199 (2d Cir.), cert. denied, 434 U.S. 872, 98 S.Ct. 217, 54 L.Ed.2d 151 (1977) (citations omitted)), cert. denied, 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980); citing United States v. Rosa, 11 F.3d 315, 342-43 (2d Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 1565, 1864, 128 L.Ed.2d 211, 485 (1994)). Given the theory advanced in opening statement and argued in closing by defense counsel, for which he presented no evidence on Petitioner's behalf, the prosecutor's remarks about the lack of proof were arguably not improper.   See Yuzary, 55 F.3d at 53; Montero v. Sabourin, 2003 WL 21012072, *7 (S.D.N.Y. May 5, 2003) ("The prosecutor's comment that defense counsel had failed to prove at trial all the things he had promised in his opening to demonstrate, did not constitute improper burden-shifting.); Darden v. Wainwright, 477 U.S. 168, 181-182, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (prosecutor's summation did not render trial fundamentally unfair where prosecutor did not manipulate or misstate the evidence, and comments were in part invited by or responsive to the summation of the defense); Orr v. Schaeffer, 460 F. Supp. 964, 967 (E.D.N.Y. 1978) (holding that the prosecutor's statements "were a rejoinder to defense counsel's argument that the witnesses' identifications were suggested by the circumstances of the photographic spread and lineup situations"; noting that "[c]ourts have consistently upheld '[t]he right of the prosecution to rebut an argument raised by the defense, even to the extent of permitting the prosecutor to inject his view of the facts to counter the defense counsel's view of the facts"); McEachin v. Ross, 951 F. Supp. 478, 482 (S.D.N.Y. 1997) (petitioner complained that prosecutor commented numerous times that he had "put forth no defense"

33

and that the effect of the prosecutor's alleged misconduct was to shift the burden of proof to petitioner; district court held that in light of trial counsel's defense argument, the prosecutor's comments were entirely proper and did not constitute misconduct).

In sum, this Court finds that the prosecutor's remarks during summation, even if prejudicial, were not such to have denied Petitioner a fair trial.  See Bentley, 41 F.3d at 824.

### b.    Prosecutor's Question of Accomplice

Petitioner also claims that the prosecutor engaged in misconduct when she asked co-defendant Everson about meetings held prior to trial with Petitioner, his attorney, and co-defendants.  (T at 684-85).  Petitioner's attorney objected to the question and an off-the-record conversation was held at the bench.  (T at 685).  Thereafter, the trial court dismissed the jury and continued to address the objection outside the presence of the jury. (Id.).  The trial court then sustained Mr. Suben's objection to where the question was leading and offered a curative instruction, which Mr. Suben declined.  (Id. at 689).

Petitioner was not prejudiced by this question.  Although the question asked was arguably leading to an improper answer, the question was never answered.  (T at 685-689). Additionally, the court sustained the defense's objection and offered the defense a curative instruction.  (Id. at 689).  Most importantly, in light of the strength of the prosecution's proof against Petitioner, he was not prejudiced by this question.  Modica, 663 F.2d at 1181, see also, Bentley, 41 F.3d 818, 824 (2d Cir. 1994)(holding that review of a habeas corpus challenge based upon prosecutorial misconduct includes consideration of "whether the conviction was certain absent the prejudicial conduct.").

34

### c.    Sentence Reduction

The last instance of alleged prosecutorial misconduct that Petitioner cites is that the prosecutor gained the cooperation of Petitioner's co-defendants by "enticing" them with significant sentence reductions in a post-sentencing agreement.  Petitioner argues that the sentence reduction was legally impossible and therefore the prosecutor acted improperly in offering it as an enticement to his co-defendants to lie.  Petitioner's trial attorney asked the court to instruct the jury that there was no basis in the law for such an offer.  (T at 767).  The trial court declined, stating that the offer of a sentence reduction is never a "done deal," but rather a recommendation the prosecution will make at a resentencing hearing.  (Id.).  Both co-defendants testified that they were aware that the prosecution did not guarantee sentence reductions, but had pledged to recommend such reductions. (T at 701, 636).

The Supreme Court in Hoffa v. United States, 385 U.S. 293, 310-12 (1966), affirmed the established practice in this country of using informant testimony against an accused.  In Hoffa, the Court rejected the assertion that informant testimony offended ideals of proper administration of justice in our courts.  Hoffa, 385 U.S. at 312.

While acknowledging that such witnesses may have a motive to lie, the Court stated that "it does not follow" that the informant's testimony is either untrue or constitutionally inadmissible. Id.  Rather, "[t]he established safeguards of the Anglo-American legal system leave the veracity of a witness to be tested by cross-examination, and the credibility of his testimony to be determined by a properly instructed jury." Id.   See also Lisenba v. California, 314 U.S. 219, 227(1941) ("practice of taking into consideration, in sentencing an accomplice, his aid to the state in turning state's evidence can be no denial of due

process to a convicted confederate."); <u>Benson v. United States</u>, 146 U.S. 325, 333-37 (1892) ("[a]n accomplice is a competent witness for the prosecution, although his expectation of pardon depends upon the defendant's conviction."); <u>United States v. Cervantes-Pacheco</u>, 826 F.2d 310, 315 (5th Cir.1987), *cert. denied,* 484 U.S. 1026, 108 S.Ct. 749, 98 L.Ed.2d 762 (1988) ("[n]o practice is more ingrained in our criminal justice system than the practice of the government calling a witness who is an accessory to the crime for which the defendant is charged and having that witness testify under a plea bargain that promises him a reduced sentence.").

In this case, the judge properly instructed the jury on accomplice testimony, as well as the credibility of testimony that is given in exchange for the recommendation of a reduced sentence. (T at 931-33). Therefore, this Court finds that the prosecution did not act improperly by offering reduced sentences to Petitioner's co-defendants and the credibility of the co-defendants' testimony was for the jury to decide. <u>See</u> <u>Hoffa</u>, 385 U.S. at 312.

Accordingly, Petitioner's claim of prosecutorial misconduct should be DENIED.

## IV. CONCLUSION

Based on the foregoing, it is recommended that the Petition be DISMISSED. Further, as the court finds there is no substantial question presented for appellate review, it is recommended that a certificate of appealability not issue. 28 U.S.C. § 2253(c)(2).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

DATED:     February 27, 2007

               Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE**

**OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

February 27, 2007

Victor E. Bianchini
United States Magistrate Judge